UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DOMINGO GONZALEZ, on behalf of himself
and others similarly situated,

                                **MEMORANDUM and ORDER**

              Plaintiffs,

                                04 CV 22 (SLT)(AKT)

    — against —

NICHOLAS ZITO RACING STABLE INC., and
NICHOLAS ZITO, in his individual capacity,

             Defendants.
------------------------------------------------------------X
**TOWNES, United States District Judge:**

      This action, brought by Domingo Gonzalez on behalf of himself and others similarly situated ("Plaintiffs"), arises from the alleged failure of Defendant, Nicholas Zito Racing Stables ("Zito Stables"), and its principal, Nicholas Zito ("Zito") (collectively, "Defendants"), to pay the appropriate overtime wage rate to employees of Zito Stables. This action was brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206, and New York Labor Law § 655 and 12 NYCRR § 142-3.2 (2004) ("New York Minimum Wage Act" or "MWA"). Plaintiffs now move for: (1) an Order amending the Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure, to change the class representative for this putative class action and to add a claim under New York Code of Rules and Regulations ("NYCRR") § 142-2.4; and (2) an Order certifying this action as a class action, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiffs' motion is granted.

## BACKGROUND

      Zito operates a horse racing enterprise and numerous stables throughout New York and the United States. To maintain the stables and the horses, Zito Stables employed workers to care

for the horses, clean the stables, and otherwise assist in the racing of the horses. Most of the potential class members in this action were employed by Zito Stables as either grooms or hot walkers. Grooms are required to prepare their horses for training each day. They typically work every morning, seven days a week, and get paid a set weekly salary, plus bonuses if the horses they care for win prizes. Grooms also return every other afternoon for one and a half hours, but are allowed to adjust their schedules with their paired partners to allow more personal time in the afternoons by arranging to alternate covering the afternoon work.

Hot walkers are responsible for cooling the race horses by walking them around after they return from training or racing. Because the horses are trained in the early mornings, a hot walker's workday ends by 10:00 a.m., but he or she is permitted to return in the afternoons on a strictly voluntary basis. Hot walkers, like grooms, are paid a set weekly salary for their work in the mornings, but any hot walker who returns to work in the afternoon is paid an additional amount. In addition to working as hot walkers and grooms, some potential class members may have worked as watchmen for the stables. Mr. Gonzalez was employed by Zito Stables as a night watchman at its facilities at Belmont Racetrack. His employment was terminated by Defendants on or about December 12, 2003.

On January 6, 2004, Mr. Gonzalez filed his Complaint on behalf of himself and others similarly situated, alleging that Defendants violated the FLSA and MWA by failing to pay him and other employees an appropriate overtime wage. The Plaintiffs, who are mainly immigrant workers from South and Central America who do not speak, read, or write English, allege that they typically worked 7-8.5 hours per day, seven days per week, 52 weeks per year, for which they were compensated at the flat rate of $400.00 per week. They allege their hours increased to as much as 12-13 hours per day during the racing season.

In July 2004, Mr. Gonzalez's counsel moved to certify this action as a collective action pursuant to the FLSA, and by Memorandum and Order dated July 23, 2004, Magistrate Judge James Orenstein granted the application to circulate a Notice of Pendency and Consent to Joinder pursuant to 29 U.S.C. § 216(b). The Notice was circulated to hundreds of prospective claimants in both English and Spanish. Although twelve additional claimants decided to join the action, that number eventually dwindled down to only six claimants plus Mr. Gonzalez. On June 22, 2005, when Mr. Gonzalez was scheduled to be deposed, he inexplicably fled the office where the deposition was scheduled to take place and refused to return. Plaintiff's counsel later advised Defendants that Mr. Gonzalez wished to discontinue his claims with prejudice.

On December 28, 2005, Plaintiffs filed the instant action, seeking to amend the complaint. Plaintiffs request leave to amend the complaint for two reasons. First, Plaintiffs seek leave to amend because the currently named plaintiff, Mr. Domingo Gonzalez, is unable to serve as the named plaintiff in this action any longer. Plaintiffs would like to change the named plaintiffs to two willing individuals, David Berrios and Ignacio Chavez, both of whom are already plaintiffs in the FLSA action.

Plaintiffs also request leave to amend the complaint to seek recovery of unpaid wages pursuant to New York Code of Rules and Regulations § 142-2.4. This law, known as the "spread of hours law" states, in part, that "an employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4. Plaintiffs learned through discovery that members of the defined class were required to work in excess of 10-hour shifts, or in a double (or "split") shift.

In addition, Plaintiffs request an Order certifying this action as a class action, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, for a class consisting of:

> The plaintiffs and all individuals including past or present employees of Nicholas Zito Racing Stables who worked as watchmen, grooms, hot walkers, and in other occupations related to the horse racing industry within the state of New York from 1999 through the present.

## DISCUSSION

### A.  *Plaintiff's Motion to Amend*

Rule 15(a) of the Federal Rules of Civil Procedure generally governs the amendment of complaints[1] and instructs courts that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). Amendments are favored as they tend "to facilitate a proper decision on the merits." *Junior Gallery, Ltd. v. Neptune Orient Line, Ltd.*, No. 94-4518, 1997 WL 26293, at *2 (S.D.N.Y. Jan. 22, 1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 48, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

Reasons to deny a motion for leave to amend include undue delay, bad faith, futility of the amendment, or prejudice to the opposing party. *See Foman*, 371 U.S. at 182. "The district court has discretion whether or not to grant leave to amend, and its discretion is not subject to

---

[1] Defendants argue that Plaintiffs' motion to amend should be governed by the "good cause" standard of Rule 16(b) and not by the lenient amendment provisions of Rule 15. Under Rule 16(b), the district court is directed to enter a scheduling order that limits the time to join other parties or amend the pleadings. *See* Rule 16(b)(1). Rule 16(b) states that "a schedule should not be modified except upon a showing of good cause and by leave of the district judge. . ." The Second Circuit has noted that "if we considered only Rule 15(a) without regard to 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (quoting *Sosa v. Airprint Sys. Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)).
    In this case, a scheduling order was entered on July 7, 2004, which fixed November 26, 2004 as the deadline for amending pleadings or joining new parties. Plaintiffs sought leave to amend on November 23, 2004, before the deadline set by the scheduling order. Therefore, Plaintiffs' motion will be analyzed under the liberal amendment standards of Rule 15(a).

review on appeal except for abuse of discretion." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (internal quotations and citations omitted).

### 1. *Plaintiffs Have Not Unreasonably Delayed Seeking Leave to Amend*

Defendants argue that Plaintiffs' motion to amend should be denied because Plaintiffs delayed making the motion until months after the close of discovery. However, Plaintiffs sought leave to amend the Complaint in the manner proposed on November 23, 2004, approximately one year before this Court allowed Plaintiffs to make their motion.

Furthermore, Plaintiffs only learned about the class-wide nature of the spread-of-hours claim by speaking with the Plaintiffs who came forward after mailing the notice of pendency of the class action, in or about October 2004. Plaintiffs point out that Mr. Gonzalez, as a night watchman, was not required to work split shifts. It was only through additional discovery that Plaintiffs realized that they had an additional cause of relief against Defendants, and Plaintiffs sought to amend the action in November 2004.

### 2. *Bad Faith Did Not Prompt Plaintiffs' Motion to Amend*

The Court does not find, nor do Defendants point to, any evidence of bad faith on the part of Plaintiffs in seeking leave to amend. As noted earlier, Plaintiffs' counsel only learned of the action under 12 NYCRR § 142-2.4 through discovery. An amendment enables a party "to assert matters that were overlooked or unknown . . . at the time . . . [of the] original complaint." *Sigma v. Dean Witter Reynolds, Inc*. 766 F.2d 698, 703 (2d Cir. 1985) (internal quotation and citation omitted). Furthermore, Plaintiffs only seek to amend the identity of the named plaintiff because Domingo Gonzalez withdrew from the lawsuit for personal reasons. Plaintiffs' counsel does not seek this amendment in bad faith.

### 3. *Amendment is Not Futile*

Defendants argue that the motion to amend should be denied because the proposed amendment is futile. They contend that, absent a declaration or affidavit from the named plaintiff, Domingo Gonzalez, the motion to amend must be dismissed. *See Randolph-Rand Corp. of New York v. Tidy Handbags, Inc.,* No. 96-1829, 2001 WL 1286989, at *5 (S.D.N.Y. Oct. 24, 2001) ("Although leave to amend 'shall be freely given,' it is inappropriate to grant leave when the amendment would not survive a motion to dismiss.") (internal quotation and citation omitted). Defendants argue that the other collective-action claimants have no standing to amend the complaint on their own. The Court disagrees with Defendants' contention. The instant action has already been certified as a class pursuant to the FLSA, and the members of the class have attained status as parties to the instant action. *See Prickett v. DeKalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003) ("[B]y referring to them as 'party plaintiff[s]' [in 29 U.S.C. § 216(b)] Congress indicated that opt-in plaintiffs should have the same status in relation to the claims of the lawsuit as do the named plaintiffs."); *see also Coan v. Nightingale Home Healthcare, Inc.*, No. 05-0101, 2006 WL 1994772, at *2 (S.D. Ind. July 14, 2006) ("Under the opt-in procedures of 29 U.S.C. § 216(b), all. . . plaintiffs. . . are full parties for all purposes."). Therefore, Messrs. Berrios and Chavez have standing to amend the complaint, and they can be substituted as the named plaintiffs. Messrs. Berrios and Chavez have already submitted affidavits to the Court in connection with their knowledge of the claims of this case, and previously testified at deposition. Thus, not only are these individuals more than able to serve as class representatives, but there will be little or no additional discovery needed for this matter to go forward.

### 4. *The Proposed Amendments Do Not Prejudice Defendants*

In the Second Circuit, a party is unduly prejudiced by an amendment to a complaint when the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery or prepare for trial; or (ii) significantly delay the resolution of the dispute. *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). Here, Defendants argue that they will be severely prejudiced because they will be exposed to new claims and potential liability many times greater than before. However, increased damages has not been recognized as prejudice sufficient to deny a motion to amend. *See Reich v. Great Lakes Collection Bureau, Inc.*, 176 F.R.D. 81, 84 (W.D.N.Y. 1997). The new claim is substantially related to the original claims for relief, and David Berrios and Ignacio Chavez have already been deposed, thus minimal additional discovery will be needed if the amendments are granted.

Defendants also contend that the amendment will prejudice Plaintiffs because Plaintiffs' proposed Amended Complaint alleges that Defendants' violation of the MWA was "willful." They argue that a finding of willfulness is all that is needed under Labor Law § 198 to invoke the mandatory requirement that the court "shall allow" liquidated damages.[2] Defendants argue that claims under Labor Law §198, providing for a liquidated damages penalty, are disqualified from class action status under C.P.L.R. § 901. Accordingly, Defendants argue, that by alleging that Defendants' violations for the MWA were willful, Plaintiffs' MWA claims cannot be certified as a class action.

---

[2] Those aggrieved by a willful violation of the New York Minimum Wage Act may recover liquidated damages equivalent to twenty-five percent of unpaid wages found to be due them. *See* N.Y. Lab. L. §§ 198, subd. 1-a, 663. However, they cannot do so as part of a class action. *See* N.Y.C.P.L.R. 901(b); *see also Ansoumana v. Gristede's Operating Corp.* 201 F.R.D. 81, 88 (S.D.N.Y. 2001).

Notwithstanding that prejudice to the moving side is generally not an element of the inquiry on a motion to amend, the Court finds that Plaintiffs will not be prejudiced by the amendment. Although liquidated damages cannot be recovered in a class action, those members of the class that wish to opt out of the action may recover liquidated damages. *See Pesantez v. Boyle Envtl. Servs., Inc.*, 251 A.D.2d 11, 12 (1st Dept 1998) ("To the extent certain individuals may wish to pursue punitive claims pursuant to Labor Law § 198 (1-a), which cannot be maintained in a class action (CPLR 901[b]), they may opt out of the class action . . ."); *see also Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 88 (S.D.N.Y. 2001) ("[T]hose affected must be given an option: to gain the convenience of class membership, or opting-out and suing individually [and obtaining liquidated damages]." Thus, if a class member wishes to pursue his or her statutory rights to liquidated damages, he or she may opt out of the class and bring an individual action. Therefore, the Court will allow Plaintiffs to amend their complaint.

### B. *Plaintiff's Motion for Class Certification*

District Courts have considerable discretion with respect to class certification, *see Califano v. Yamasaki*, 442 U.S. 682, 703, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979), and it is proper for a district court to view a class action liberally in the early stages of litigation. *Woe by Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir. 1984). "When considering a motion for class certification, courts should consider the allegations in the complaint as true." *Hirschfeld v. Stone*, 193 F.R.D. 175, 182 (S.D.N.Y. 2000) (citing *Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n.15 (2d Cir. 1978)). However, a court may consider material beyond the pleadings in determining whether to certify a class. *Daniels v. City of New York*, 198 F.R.D. 409, 413 n.5 (S.D.N.Y. 2001). "In deciding a certification motion, district courts must not

consider or resolve the merits of the claims of the purported class." *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999).

Plaintiffs bear the burden of proof on a motion for class certification under Fed. R. Civ. P. 23. *See Monaco v. Stone,* 187 F.R.D. 50, 59 (E.D.N.Y. 1999); *Ansoumana,* 201 F.R.D. at 85. First, Plaintiffs must demonstrate that under Fed. R. Civ. P. 23(a) the putative class has: (1) sufficient numerosity to make individual joinder impracticable; (2) commonality of questions of law or fact; (3) typicality of claims; and (4) representatives who fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P 23(a). Once the Rule 23(a) criteria are established, the Plaintiffs must then demonstrate that they are entitled to certification in at least one of the Rule 23(b) categories. *Ansoumana,* 201 F.R.D. at 85. Because Plaintiffs move for class certification under Fed. R. Civ. P. 23(b)(3), they must show that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. *Rule 23(a) Requirements*

#### a. *Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a). In the Second Circuit, "numerosity is presumed at a level of 40 members." *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). In this case, Plaintiffs estimate the size of the class to be approximately 500 to 700 workers. Indeed, Defendants' employee list sets forth the names of roughly 488 individuals that

9

are potential class members; thus, the Court finds that there are enough potential class members to fulfill the numerosity prong.

### b. *Commonality*

The second requirement of Rule 23(a) is that class members share in common "questions of law and fact." Fed. R. Civ. P. 23(a). "[A] single common question may be sufficient to satisfy this rule." *Marisol A. ex. rel. Forbes v. Giuliani*, 929 F. Supp. 662, 690 (S.D.N.Y. 1996), *aff'd* 126 F.3d 372 (2d Cir. 1997). The common question of fact here is whether the plaintiff class members were denied overtime pay. The common question of law is whether the labor laws were violated by this alleged failure to pay overtime. During the relevant time period, Plaintiffs all worked as laborers for Zito Stables. Accordingly, the commonality requirement is satisfied.

Defendants argue against a finding of commonality because the class consists of both grooms and hot walkers, and each group has different responsibilities, works different hours, and receives different pay. However, once a common question is identified, "differences among the questions raised by individual members [of the class] will not defeat commonality." *German v. Federal Home Loan Mortgage Corp.*, 885 F. Supp. 537, 553 (S.D.N.Y. 1995). Here, where it is clear that all of the proposed class members would rely on the same allegedly wrongful conduct of the Defendants and muster the same legal arguments in support of their claims, the Plaintiffs have satisfied this requirement.

### c. *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a). "Rule 23(a)(3)'s typicality

10

requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). In this case, each class member will make the same arguments to prove Zito Stables' liability, specifically that they were underpaid in violation of the FLSA and New York Labor Laws. Thus, typicality is satisfied.

Defendants argue that the elements of each individual's claims are considerably different. Each claimant was responsible for different horses and different horses raced at different times, so they argue there is no formula applicable to every groom to determine whether, as a class, they were underpaid in violation of the law. They argue that claims will differ even more for the hot walkers, whose extra work was strictly voluntary and accordingly varied widely from case to case. In addition, Defendants contend that, because Berrios and Chavez, the putative class representatives, are grooms, their claims are not representative of the claims of the hot walkers.

However, courts have found the typicality requirement satisfied despite the existence of similar factual variations. For example, in *Iglesias-Mendoza v. La Belle Farm, Inc.*, the Court found there was typicality even though the named plaintiffs worked exclusively as animal feeders in one department, and other workers in the putative class worked in other departments performing different tasks on a different schedule. 239 F.R.D. 363, 371 (S.D.N.Y. 2007). The Court stated that "[a]s long as plaintiffs assert . . .that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality." *Id.* (quoting *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002)).

### d. *Adequacy of Representation*

The Plaintiffs satisfy the requirements of Fed. R. Civ. P. 23(a)(4), which requires that "the representative parties will fairly and adequately protect the interest of the class." The requirement that the named plaintiffs adequately represent the class is motivated by concerns similar to those driving the commonality and typicality requirements, namely, the efficiency and fairness of class certification. *Marisol A. ex. rel. v. Giuliani,* 126 F.3d 372, 378 (2d Cir. 1997). The adequacy inquiry has two parts: (1) Class counsel must be qualified, experienced, and able to conduct the litigation; and (2) Plaintiffs must also demonstrate that there is no conflict of interest between the named plaintiffs and other members of the plaintiff class. *Id.*

Defendants argue that Messrs. Berrios and Chavez are inadequate class representatives because neither has a formal education nor reads or speaks English. However, "[a] tenuous grasp of the English language is insufficient to render a putative class representative inadequate."
*Noble v. 93 University Place Corp.,* 224 F.R.D. 330, 344 n.105 (S.D.N.Y. 2004). While this may raise some question as to whether Plaintiffs have the ability to "ensure vigorous prosecution of the litigation" by at least minimally supervis[ing] class counsel, the courts have held that "a rigid application of this requirement is inappropriate where, as here, the class compromises relatively low-skilled laborers. Such inflexibility runs counter to a principal objective of the class action mechanism - to facilitate recovery for those least able to pursue an individual action." 5 James Wm. Moore et. al., *Moore's Federal Practice* § 23.25[4][c][i]-[ii] (3d ed. 2003); *see also Noble*, 224 F.R.D. at 344-45; *Iglesias-Mendoza*, 239 F.R.D. at 372. Further, there should be no conflicts between the class members and the representatives of the putative

12

class, because the named plaintiffs seek the same relief as the members of the class: namely, to receive the unpaid wages owed to them by Zito Stables.

In addition, the Court finds that Plaintiffs' legal counsel, who are experienced commercial litigators and have brought numerous similar cases in state and federal court, are qualified to conduct the litigation. Therefore, the adequacy prong is satisfied.

### 2. *Rule 23(b)(3) Requirements*

Before they may proceed as a class, Plaintiffs must also satisfy the requirements of Rule 23(b)(3). Rule 23(b)(3) requires that common issues of law and fact predominate over individual claims, and that a class action is superior to other means of adjudicating the action. *See* Fed. R. Civ. P. 23(b)(3).

#### a. *Predominance*

The Court finds that common questions of law and fact predominate over individualized questions. In order to meet the predominance requirement the plaintiff must establish that issues of general proof predominate over issues of individualized proof. *See In Re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 136 (2d Cir. 2001). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).

The predominant questions in this class action are whether Defendants failed to pay their stable workers, including grooms and hot walkers, overtime wages and whether this alleged failure violated NYS Labor Law. *See Mascol v. E & L Transp., Inc.*, No. 03-3343, 2005 WL 1541045, at *7 (E.D.N.Y. June 29, 2005) (finding predominance where common question in

13

class action was whether defendants failed to pay their ambulette drivers overtime wages and whether this alleged failure violated NYS Labor Law). "[A] single issue predominates . . . because each proposed class member did substantially the same type of work, for the same type of employer, and was assigned in the same sort of way, during the relevant time period." *Ansoumana*, 201 F.R.D. at 89.

Therefore, common questions of liability clearly predominate over individual inquiries. Although Defendants argue that where individual questions of liability must first be determined, predominance is lacking, the Court finds that some factual variation among the circumstances of the class members is inevitable and does not defeat the predominance requirement. "As in many class actions, plaintiffs' damages here will differ." *Bolanos*, 212 F.R.D. at 157-58 (finding that common issues predominate despite the fact that employees worked in different positions, for different departments, on different ships, at different times, and under different supervisors). However, "[w]hen determining whether common questions predominate, courts focus on the liability issue . . . and if the liability issue is common to the class, common questions are held to predominate over individual questions. " *Id.* (internal quotations and citations omitted). Should plaintiffs prevail, factors such as any variations in schedule and type of work performed, will determine the measure of damages.

        **b.**     ***Superiority***

The Court further finds that the class action form is superior to alternative methods of adjudicating this controversy. The class members in this case have no strong interest in individually controlling the litigation because it is unlikely that a member of the class, which is made up primarily of workers with limited resources and limited proficiency in English, would

bring an individual suit. *See Iglesias-Mendoza*, 239 F.R.D. at 373 ("The proposed class members are almost exclusively low-wage workers with limited resources and virtually no command of the English language or familiarity with the legal system. It is extremely unlikely that they would pursue separate actions."). The Court finds that the interest of the class as a whole to litigate the predominant common questions substantially outweighs any interest by individual members to bring and prosecute separate actions.

### 3. *The Court Will Exercise Supplemental Jurisdiction Over the Class*

A court may properly assume supplemental jurisdiction over a state law claim when the state and federal claims "derive from a common nucleus of operative fact," such that the parties "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). District courts have traditionally exercised jurisdiction where, as here, "considerations of judicial economy, convenience and fairness to litigants" favor hearing the state and federal claims together. *Ansoumana,* 201 F.R.D. at 90 (quoting *Gibbs*, 383 U.S. at 726). The Second Circuit has stated that "[a] federal court's exercise of pendent jurisdiction over plaintiff's state law claims, while not automatic, is a favored and normal course of action." *Iglesias-Mendoza,* 239 F.R.D. at 374 (quoting *Promisel v. First American Artificial Flowers, Inc.,* 943 F.2d 251, 254 (2d Cir. 1991)).

Defendants argue that the Court should decline to exercise supplemental jurisdiction over the state law MWA claim because, in light of the size of the proposed class, the case is predominantly a matter under state law. Defendants argue that the state law claims will predominate the FLSA claim and allow "a federal tail to wag what is in substance a state dog."

*Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995). The Court finds Defendants' contentions without merit.

In the present case, the federal and state law claims derive from a common nucleus of operative fact and warrant the exercise of supplemental jurisdiction. The federal and state wage and hour claims are essentially the same and arise out of the same alleged conduct of the defendants. "The members of both classes performed the same type of work for the same . . . employers and were deprived of overtime compensation purportedly as the result of the same alleged scheme. There is no reason why the claims should be separately litigated in two different courts." *Brzychnalski v. Unesco, Inc.*, 35 F. Supp. 2d 351, 354 (S.D.N.Y. 1999).

Defendants' reliance on *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003) is misplaced. First, the Court notes that although Defendants argue that this case should control, Third Circuit precedent is, of course, not binding on this Court. Furthermore, a primary reason that the court in *De Asencio* declined to exercise supplemental jurisdiction in that case was because the state law claims presented novel and complex issues of Pennsylvania state law which the court thought were "better left to the Pennsylvania state courts." 342 F.3d at 311. Here, there are no complex issues of state law, as the state law claims essentially replicate the FLSA claims.

In addition, Defendants seem to ignore the fact that the overwhelming authority of district court cases from this circuit have simultaneously certified FLSA and New York Labor Law claims. *See, e.g. Iglesias-Mendoza*, 239 F.R.D. at 374-75; *Torres v. Gristedes Operating Corp*. No. 04-3316, 2006 WL 2819730, at *11 (S.D.N.Y. Sept. 29, 2006); *Ansoumana*, 201 F.R.D. at 96; *Noble*, 224 F.R.D. at 341; *Brzychnalski,* 35 F. Supp. 2d at 353-54; *Ouedraogo v.*

*Durso Associates, Inc.*, No. 03-1851, 2005 WL 1423308, at *2 (S.D.N.Y. June 16, 2005). Although Defendants argue that the size disparity between the FLSA class and the putative Rule 23 class should prevent the court from exercising jurisdiction, district courts in this circuit "have unflinchingly certified FLSA and New York Labor Law claims together without so much as noting the inherent size disparities." *Iglesias-Mendoza*, 239 F.R.D. at 375. Therefore, the Court will exercise jurisdiction over the state law MWA claim.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion is GRANTED. Pursuant to Fed. R. Civ. P 15, Plaintiffs are permitted to amend the complaint to change the class representatives for this putative class action and to add a claim under NYCRR § 142-2.4. Further, the Court certifies a class pursuant to Fed. R. Civ. P. 23 with respect to Plaintiffs' claims under New York Labor Law §§ 652 and 655, as well as 12 NYCRR §§ 142.2.1, 142-2.4 and 142-3.2.

SO ORDERED.

Dated: Brooklyn, New York
March 31, 2008

*Sandra L. Townes*
SANDRA L. TOWNES
United States District Judge